UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
_____

In re:

CRAIG & LYNDA HERREMANS,

      Debtors.

_____/

CRAIG ALAN HERREMANS,

      Plaintiff & Counter-Defendant,

-vs-

RANDY FEDO,

      Defendant & Counter-Plaintiff.

_____/

Case No.  BG 15-01567
Chapter 12

Adversary Proceeding
No. 17-80086

## OPINION DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

Appearances:

Jonathan R. Moothart, Esq., Williamsburg, Michigan, and Donald H. Passenger, Esq., Grand Rapids, Michigan, attorneys for Plaintiff and Counter-Defendant Craig Alan Herremans.

Paul A. Ledford, Esq., Grandville, Michigan, and Nicholas S. Laue, Esq., Grand Rapids, Michigan, attorneys for Defendant and Counter-Plaintiff, Randy Fedo.

I.      INTRODUCTION AND PROCEDURAL BACKGROUND.

On July 18, 2023, this court entered an Opinion and Judgment and Order Regarding Remedy for Shareholder Oppression and Damages for Automatic Stay Violation in the above-captioned adversary proceeding.  (AP Dkt. Nos. 190 & 191,

1

referred to collectively herein as the "Damages Order."[1])  The Damages Order generally ordered Defendant Randy Fedo to purchase Plaintiff Craig Herremans' shares of stock in Ran-Starr, Inc. for $331,473.97 as the remedy for conduct by Fedo that constituted shareholder oppression of Herremans under the Michigan Business Corporation Act, Mich. Comp. Laws § 450.1489.  It also awarded Herremans a money judgment of $3,460.60 for attorneys' fees and expenses incurred due to Defendant Fedo's violation of the automatic stay.

On August 1, 2023, Herremans filed a Motion to Amend Judgment Pursuant to Fed. R. Bankr. P. 9023 or in the Alternative for Relief from Judgment Pursuant to Fed. R. Bankr. P. 9024 (AP Dkt. No. 192, referred to herein as the "Motion to Reconsider").  The motion asks this court to reconsider three aspects of the Damages Order.[2]  First, the motion argues that the court should reconsider its determination that Herremans was not entitled to the full amount of attorneys' fees requested by his counsel as damages for Fedo's stay violation.  The motion also asks the court to reconsider its determination that

---

[1]     The Damages Order also incorporated a prior bench opinion and order on the liability issues presented in this adversary proceeding by reference.  (See Transcript of December 19, 2022, Bench Opinion, referred to herein as the "Liability Opinion," AP Dkt. No. 184; Order Regarding Liability on Claims and Counterclaims, AP Dkt. No. 172.)

[2]     In addition to requesting reconsideration of issues decided in connection with the Damages Order, the Plaintiff's motion also argues that the proceeds of the sale of Herremans' Ran-Starr stock should be subject to surcharge for the reasonable and necessary costs of preserving the stock's value under 11 U.S.C. § 506(c).  This argument is also the subject of a separate Motion for Surcharge Pursuant to Section 506(c) filed by Debtors Craig and Lynda Herremans in the base case.  (See Base Case Dkt. No. 414.)  The court notes that a direct request for surcharge of the sale proceeds was not previously made in the adversary proceeding and was not addressed in the Damages Order.  Further, the proposed surcharge would affect the secured creditors who have an interest in Herremans' Ran-Starr stock – i.e., Fedo and Gerald and Bernice Shafer, as the successors-in-interest to Chemical Bank – as well as the Chapter 12 Trustee and the bankruptcy estate.  Because neither the Shafers nor the Chapter 12 Trustee are parties to this adversary proceeding, the court agrees with the Debtors that the surcharge request is best addressed in the base case.  The court shall schedule a status conference on the base case surcharge motion in due course.

an award of punitive damages for the stay violation was not appropriate in this proceeding. Finally, with regard to the shareholder oppression remedy, the motion asserts that pre-judgment interest should be added to the court's valuation of Herremans' Ran-Starr stock, which the court generally calculated as of December 31, 2017.[3]

## II.    DISCUSSION.

Because the Plaintiff's motion was filed on the fourteenth day after entry of the judgment, the court will analyze the motion as a motion to alter or amend the prior judgment under Fed. R. Civ. P 59(e), which is made applicable to this adversary proceeding pursuant to Fed. R. Bankr. P. 9023.  *See In re Fuller*, 581 B.R. 236, 241 (Bankr. W.D. Mich. 2018) ("When a party seeks to alter or amend a judgment within fourteen days of its entry, the more liberal standard under Bankruptcy Rule 9023, as opposed to Bankruptcy Rule 9024, generally applies.").  Alteration or amendment of a judgment under Rule 59(e) is only justified in instances where there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice. *See GenCorp, Inc. v. American Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).  "The burden of demonstrating the existence of a manifest error of fact or law rests with the party seeking reconsideration."  *Hamerly v. Fifth Third Mortgage Co. (In re J & M Salupo Dev. Co.)*, 388 B.R. 795, 800-01 (6th Cir. B.A.P. 2008).  Motions for reconsideration are "not an opportunity to re-argue a case" and should not be used by the parties to "raise arguments which could, and should, have been made before judgment

---

[3]      More specifically, the court's determination of the "fair value" of Herremans' Ran-Starr stock was based on a February 22, 2018, appraisal of the Ran-Starr real property and the corporation's December 31, 2017, balance sheets as adjusted by the court.

issued." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998).

    A. <u>*Attorneys' Fees*</u>.

The first argument raised in the Plaintiff's Motion to Reconsider asserts that the court made a clear error of law when it limited its award of attorneys' fees for Fedo's violation of the automatic stay to invoiced amounts relating directly to remedying the stay violation, both in this litigation and in the state court, but declined to award additional fees based on the Plaintiff's estimates as to the percentage of general trial preparation and presentation that may have stemmed from efforts to redress the stay violation in this proceeding.  In a brief filed prior to entry of the Damages Order, the Plaintiff previously argued that 15% percent of the attorneys' fees incurred in preparing for and attending the trial in this proceeding should be attributed to remedying the stay violation because "substantially more than 15%" of the Plaintiff's trial exhibits (Plf. Exhs. 17, 18, 21, 22, 24, 25 and 26, out of approximately 32 exhibits admitted at trial total) were presented in support of his stay violation claim.  The court rejected that argument in its Damages Order, deeming the Plaintiff's estimate too speculative to form the basis for an award of additional attorneys' fees.  The Plaintiff now asserts that the court's determination on this point is not consistent with recent Supreme Court precedent which states that a trial court need not achieve "auditing perfection" when awarding attorneys' fees, but instead may base such an award on its "overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."  *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 109-10, 137 S. Ct. 1178 (2017) (discussing the federal courts' inherent power to sanction misconduct by assessing attorneys' fees and describing the standard as a "but-for" test

4

requiring consideration of whether a "given legal fee . . . would or would not have been incurred in the absence of the sanctioned conduct").

The court disagrees with the Plaintiff's assertion that it applied the wrong legal standard with regard to this issue.  In deeming the Plaintiff's estimates too speculative, the court was not requiring "auditing perfection," but was instead searching – ultimately, in vain – for the required causal connection between the overall attorneys' fees incurred in this proceeding and the automatic stay violation.  *See Grine v. Chambers (In re Grine)*, 439 B.R. 461, 468-69 (Bankr. N.D. Ohio 2010) ("Under § 362(k), a plaintiff is entitled only to damages reasonably incurred as a proximate result of the violation of the stay" and such damages must be "proven with reasonable certainty and must not be speculative or based on conjecture.") (citing *In re Archer*, 853 F.2d 497, 499-500 (6th Cir. 1988)). The Plaintiff's own "estimate," which is based on the number of exhibits offered at trial, illustrates how speculative the request for additional attorneys' fees was in this case.  The court could just as easily state that the seven exhibits cited by the Plaintiff comprise 79 pages out of the 1,153 pages of exhibits submitted, or 7% of the total.  Or that the stay violation claim on which Herremans prevailed was one of approximately twenty-four different claims (4% of the total), asserted by Herremans in this lawsuit.  The court cannot say that any one of these calculations is more reflective of the true causal relationship between the efforts to redress the stay violation and the total attorneys' fees incurred than the others.

Instead of relying on an arbitrary calculation, the court based its attorneys' fee award on its "overall sense of the suit," which is that Herremans pursued multiple claims against Fedo, sounding in both shareholder oppression and violation of the automatic

5

stay.  These claims were inextricably related and primarily targeted at vindicating and protecting Herremans' rights as a Ran-Starr shareholder.  The stay violation claim on which Herremans ultimately prevailed involved conduct by Fedo that occurred in June of 2021 and thereafter, which was four years after this adversary proceeding was filed.  The fact that the stay violation occurred very late in the history of this lengthy litigation further suggests to the court that it was not a driving force behind the filing and pursuit of this lawsuit.  In the Damages Order, the court awarded Herremans the actual attorneys' fees he incurred in remedying the stay violation in both the state court and in this litigation.  Beyond that, the court finds it nearly impossible to go back in hindsight and assign a particular percentage of the trial preparation and presentation costs to any of the claims asserted in this proceeding.  The Plaintiff's Motion to Reconsider the court's prior determination on this issue is denied.

B. *Punitive Damages.*

The second argument raised in the Plaintiff's Motion to Reconsider is that the court erred in declining to award punitive damages for Fedo's willful violation of the automatic stay.  The Plaintiff's Motion does not cite any new evidence on this point, but rather re-states the chronology of the stay violation in an effort to demonstrate that Fedo's actions were more egregious than reflected in the court's analysis of the punitive damages request.  The court previously considered the Plaintiff's arguments for punitive damages, both at trial and during post-trial briefing and argument.  This prior analysis included careful consideration of the back-and-forth that occurred in the state court regarding the submission of Fedo's proposed orders of judgment, Herremans' objections, and the trial court's ultimate decision on the issue.  Although this court is not surprised that the

6

Plaintiff's view of the actions and motivations of Fedo and his counsel differs greatly from the court's, the Motion to Reconsider the determination that punitive damages are not warranted in this case is nothing more than an improper attempt to re-argue issues that were already decided.  The Plaintiff's request must be denied on that basis.

C. *Pre-Judgment Interest*.

Finally, the Plaintiff's Motion to Reconsider asserts, for the first time, that the court should add interest to the oppression buyout it has ordered in this proceeding.  In support of this assertion, Plaintiff cites a Michigan statute, Mich. Comp. Laws § 600.6013, which mandates pre-judgment interest awards on money judgments.  This argument fails for two reasons.  First, this is the first time this argument has been made by the Plaintiff; it could and should have been raised in briefing and argument prior to entry of the Damages Order.  Second, the court did not award the Plaintiff a money judgment for shareholder oppression in its Damages Order.  As this court stated in both the Liability Opinion and the Damages Opinion, the buyout it has ordered of Herremans' Ran-Starr stock at fair value is one of the equitable remedies permitted by the Michigan shareholder oppression statute, not a money judgment.  *See* Mich. Comp. Laws § 450.1489(1)(e); *Moore v. Carney*, 269 N.W.2d 614, 617 (Mich. Ct. App. 1978) (judgment requiring buyout of minority shareholder as remedy for oppressive conduct was "not a 'money judgment;'" accordingly, trial court was not required to award prejudgment interest).  The court was not required to add pre-judgment interest to the equitable remedy it crafted, and the decision not to do so was not a clear error of law.

Likewise, to the extent the addition of pre-judgment interest to the fair value calculation was merely discretionary, the court does not believe that the failure to award

7

interest is manifestly unjust under the facts of this case.  Although Herremans did not raise the issue of pre-judgment interest in his supplemental Legal Memorandum Regarding Fair Value and Punitive Damages, he did raise a similar argument that the court should value the Ran-Starr real estate at the 2018 appraised value "plus a modest 5% increase in value per year."  (*See* AP Dkt. No. 185, at p. 6.)  The court rejected this argument, just as it rejected Fedo's argument that that "fair value" was established at the 2022 foreclosure sale, for reasons explained in the Damages Opinion.  Accordingly, the court has already addressed the Plaintiff's general arguments regarding the timing of the valuation, albeit couched in the context of appreciation as opposed to interest.  The court declines to revisit these issues in the context of the Plaintiff's Motion to Reconsider.

III.    <u>CONCLUSION</u>.

In summary, the Plaintiff's Motion to Reconsider fails to demonstrate that the Damages Order was based on clear errors of fact or law or results in manifest injustice such that it should be altered or amended under Rule 59(e).  The Motion to Reconsider shall be denied and a separate order shall enter accordingly.

**IT IS SO ORDERED.**

**Dated August 11, 2023**




James W. Boyd
United States Bankruptcy Judge